T.C. Memo. 1997-55


UNITED STATES TAX COURT


ESTATE OF CLARA D. BAIRD, DECEASED, FLEET TRUST COMPANY, WILLIAM
C. BAIRD, AND BARBARA B. GROETZINGER, CO-EXECUTORS, Petitioner
<u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 5726-95.                    Filed January 30, 1997.


<u>Sherman F. Levey</u>, <u>Peter Oddleifson</u>, and <u>Eric R. Paley</u>,
for petitioner.

<u>Theodore R. Leighton</u>, <u>Mark A. Ericson</u>, and <u>Theresa G.</u>
<u>McQueeney</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

FOLEY, <u>Judge</u>:  By notice dated January 17, 1995, respondent

determined a deficiency in petitioner's estate tax of

$118,709.31.  All section references are to the Internal Revenue

Code in effect as of the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure. After concessions, the sole issue for decision is whether petitioner, pursuant to section 2053(a)(2), is entitled to deduct from the gross estate $368,100 paid for attorney's fees. We hold that petitioner is so entitled to the extent stated herein.

                    FINDINGS OF FACT

Some of the facts have been stipulated and are so found. At the time of her death, on May 26, 1991, Clara D. Baird (decedent) resided in Brighton, New York. At the time the petition was filed, the Estate of Clara D. Baird (petitioner) had a mailing address in Rochester, New York; Fleet Trust Company (Fleet), the corporate executor, had its principal place of business in Rochester, New York; and co-executors William C. Baird and Barbara B. Groetzinger resided in Rochester, New York, and Virginia Beach, Virginia, respectively.

In 1983, decedent retained the services of Harris, Beach, & Wilcox (HBW), a Rochester law firm, to prepare her estate planning documents. HBW's trust and estate practice had an excellent reputation in the local community. Peter Oddleifson, an HBW partner, represented decedent. Mr. Oddleifson graduated from Harvard Law School in 1957 and had many years of trust and estate experience. On June 23, 1983, decedent executed her will. Decedent executed a codicil to the will on January 18, 1984, and a trust agreement on December 21, 1984. The will provided that

Security Trust Company of Rochester (currently Fleet), Mr. Baird, and Ms. Groetzinger would serve as co-executors. Mr. Baird and Ms. Groetzinger are decedent's children and the residuary legatees under the will.

On May 26, 1991, at the age of 98, decedent died. The executors, in accordance with decedent's instructions, retained HBW to provide all necessary legal services for petitioner. Shortly after the decedent's death, Mr. Baird, Ms. Groetzinger, Mr. Oddleifson, and Mr. David Lyddon (vice president and trust officer of Fleet) met to review the assets of the estate and discuss anticipated expenses of administration. These expenses included the estate's obligation to satisfy all outstanding liabilities, pay executor's commissions, pay attorney's fees, and fund the trust created by decedent's will.

At the meeting, Mr. Lyddon produced a schedule estimating the value of the gross estate and the expenses of administration. Mr. Lyddon prepared the schedule the day decedent died. Based on an estimated gross estate of $17,000,000, the schedule estimated that each executor would receive a statutory commission of $374,000. The schedule also estimated that HBW would be paid $374,000 in attorney's fees. The estimate of attorney's fees was consistent with the community practice that attorney's fees approximate a single executor's commission.

On February 24, 1992, petitioner's Federal estate tax return was filed.  On the return, petitioner valued the gross estate at $17,181,224.41.  The estate consisted of the following assets:

| Assets | Value at Date of Death |
|---|---|
| Real estate | $215,000.00 |
| Stocks and bonds | 16,257,550.34 |
| Mortgages, notes, and cash | 244,550.28 |
| Other miscellaneous property | 119,930.14 |
| Transfers during decedent's life | 344,193.65 |
| | $17,181,224.41 |

On the return, petitioner claimed deductions from the gross estate of $368,100 for attorney's fees and $1,104,300 (3 x $368,100) for executor's commissions.

On January 25, 1993, and May 11, 1993, Mr. Oddleifson filed affidavits in support of the requested attorney's fees with the Monroe County Surrogate's Court.  Both affidavits provided in pertinent part:

> The terms of the retainer agreement are to provide all required legal services for the estate at a fee to be determined in line with the local custom and practice of the Monroe County community and subject to the approval of the Monroe County Surrogate.

> The amount requested for compensation for legal services rendered to the Estate is $368,100 based upon an estate valued at $17,181,000.  This amount includes all services rendered and to be rendered up to and including the settlement of the decree and distribution.

The May 11, 1993, affidavit stated that HBW had performed approximately 229 hours of work on behalf of the estate through

April 30, 1993. This included approximately 30 hours of work performed in connection with the sale of decedent's residence which was specifically devised to Ms. Groetzinger. Also included was approximately 11 hours of work performed to obtain advance payment of executor's commissions of $184,500 each to Mr. Baird and Ms. Groetzinger. On May 24, 1993, the Monroe County Surrogate issued a Decree of Judicial Settlement allowing the entire $368,100 in requested attorney's fees.

On January 17, 1995, a statutory notice of deficiency was timely mailed to petitioner. Respondent disallowed $265,600 of petitioner's claimed deduction for attorney's fees.

As of May 30, 1996, HBW had performed 555.7 hours of work on behalf of the estate. This amount included 269 hours devoted to the controversy with the Internal Revenue Service over the subject matter of this case.

## OPINION

Section 2053(a)(2) allows a deduction from the gross estate for administration expenses. Administration expenses include attorney's fees. Sec. 20.2053-3(a), Estate Tax Regs. To be deductible under section 2053(a)(2), the administration expense must be allowable under (1) local law and (2) the regulations. Estate of Reilly v. Commissioner, 76 T.C. 369, 372 (1981); Estate of Smith v. Commissioner, 57 T.C. 650, 661 (1972), affd. 510 F.2d 479 (2d Cir. 1975); Estate of Love v. Commissioner, 923 F.2d 335, 337-338 (4th Cir. 1991), affg. T.C. Memo. 1989-470. Petitioner

bears the burden of proving its entitlement to the deduction. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

I.  Local Law

Petitioner contends that the attorney's fees are allowable under local law because the Monroe County Surrogate's Court issued a decree allowing the fees.  Section 20.2053-1(b)(2), Estate Tax Regs., addresses the effect of a local court decree:

> The decision of a local court as to the amount and allowability under local law of a claim or administration expense will ordinarily be accepted if the court passes upon the facts upon which deductibility depends. * * * It must appear that the court actually passed upon the merits of the claim. This will be presumed in all cases of an active and genuine contest. * * * The decree will not be accepted if it is at variance with the law of the State.  * * *

While it appears that the court passed upon the merits of the claim, the relevant portion of the Surrogate's Court's opinion contains no analysis supporting its conclusion. Therefore, it is unclear whether the opinion is consistent with New York law.  Accordingly, we must conduct our own examination of whether these expenses are deductible under New York law as determined by the New York Court of Appeals.  In doing so, we give "proper regard" to the relevant rulings of New York's lower courts.  Commissioner v. Estate of Bosch, 387 U.S. 456, 465 (1967); United States v. White, 853 F.2d 107, 113-115 (2d Cir. 1988).

To be approved under New York law, requested attorney's fees must be reasonable. In re Potts' Estate, 209 N.Y.S. 655, 657 (App. Div.), affd. 150 N.E. 568 (N.Y. 1925). The New York Court of Appeals has enumerated the following factors to be considered in determining whether attorney's fees are reasonable: (1) The time and labor required; (2) the difficulty of the questions involved, and the skill required to handle the problems presented; (3) the lawyer's experience, ability, and reputation; (4) the amount involved and benefit resulting to the client from the services; (5) the customary fee charged by attorneys in the community for similar services; (6) the contingency or certainty of compensation; (7) the results obtained; and (8) the responsibility involved. In re Estate of Freeman, 311 N.E.2d 480, 484 (N.Y. 1974).

After analyzing each of the Freeman factors, we conclude that the $368,100 in attorney's fees is reasonable under New York law. First, the fees received by HBW were consistent with reasonable customary fees for similar services. Petitioner presented sufficient evidence to establish that in Monroe County attorneys customarily receive fees equal to one executor's commission for representing an estate. The Monroe County Surrogate's Court awarded HBW fees equal to approximately one executor's commission. In addition, the $368,100 fee was equal to 2.09 percent of the gross estate. New York courts have held that a fee award equal to 3 percent of the gross estate is

facially reasonable. In re Goldstick, 581 N.Y.S.2d 165, 169 (App. Div. 1992); see also In re Estate of Gates, 503 N.Y.S.2d 161, 162-163 (App. Div. 1986) (allowing fees equal to 6 percent of the gross estate); In re Kennedy's Estate, 290 N.Y.S.2d 964, 971 (Sur. Ct. 1968) (holding that fees equal to approximately 4 percent of the gross estate are presumptively reasonable); In re Kentana's Estate, 10 N.Y.S.2d 811, 812 (Sur. Ct. 1939) (observing that reasonable compensation will ordinarily approximate between 5 percent of the gross estate and a single executor's commission).

Second, HBW's experience, ability, and reputation were excellent. HBW was highly regarded in the local community for its expertise in trust and estate matters. The partner in charge of administering the estate, Mr. Oddleifson, was an experienced and well-respected attorney.

Third, the services rendered by HBW benefitted the estate by obtaining favorable results. Mr. Baird testified that HBW "has done a very good job" representing petitioner, and we have no reason to conclude otherwise. Respondent contends that the estate did not benefit from HBW's services, because the litigation relating to the deductibility of HBW's fees delayed the closing of the estate. We reject this contention. Contesting an estate tax deficiency directly benefits the estate, because the estate's tax burden may be reduced.

Fourth, decedent's estate was large, and HBW undertook significant responsibility in representing it. The amount involved (i.e., the size of the estate) is a significant factor in determining whether the fees are reasonable. See In re Estate of Freeman, supra at 484. Decedent's estate is valued at $17,181,224.41. Because the estate is large, HBW took on a great deal of responsibility in representing it. A mistake could have resulted in a considerable loss to the estate and, ultimately, to the decedent's beneficiaries.

While the previous factors favor petitioner, there are other factors we must consider. First, HBW performed 555.7 hours of service on behalf of petitioner for fees of $368,100. Respondent contends that such large fees are per se unreasonable, because they are excessive when compared to the number of hours worked. Time spent, however, is not the most important factor in determining whether the fees are reasonable. In re Brehm's Estate, 322 N.Y.S.2d 287, 290 (App. Div. 1971); In re Snell's Estate, 235 N.Y.S.2d 855, 860 (App. Div. 1962); In re Potts' Estate, supra at 657; Estate of Gillett, 527 N.Y.S.2d 690, 691 (Sur. Ct. 1988); In re Kentana's Estate, supra. Therefore, while this factor favors respondent, we decline to adopt respondent's proposed time-clock approach.

Second, the representation of petitioner did not involve any particularly difficult issues. Mr. Lyddon testified that the administration of the estate was not difficult, because Fleet

already had control in an investment management account of most of decedent's assets. In addition, the estate primarily consisted of marketable securities that were converted almost immediately into cash or cash equivalents.

Third, the fees requested by HBW were fixed and not contingent on the results produced. Contingency fee arrangements are rarely used, however, for services related to estate administration. Moreover, given the size and liquidity of the estate, the collectibility of HBW's fees was never an issue.

After a review of all the factors, we conclude that the $368,100 in attorney's fees is reasonable under New York law. Accordingly, we hold that the attorney's fees are allowable under local law. We next determine whether the fees are allowable under the regulations.

II. The Regulations

The regulations provide the following requirements for the deduction of administration expenses:

> The amounts deductible * * * are limited to such expenses as are actually and necessarily incurred in the administration of the decedent's estate * * *. The expenses contemplated in the law are such only as attend the settlement of an estate and the transfer of the property of the estate to individual beneficiaries * * *. Expenditures not essential to the proper settlement of the estate, but incurred for the individual benefit of the heirs, legatees, or devisees, may not be taken as deductions. * * * [Sec. 20.2053-3(a), Estate Tax Regs.]

"Expenses for selling property of the estate are deductible if the sale is necessary to pay the decedent's debts, expenses of

administration, or taxes, to preserve the estate, or to effect distribution."  Sec. 20.2053-3(d)(2), Estate Tax Regs.; see also Estate of Posen v. Commissioner, 75 T.C. 355, 359 (1980).

Respondent contends that the fees relating to 30 hours of work performed in connection with the sale of decedent's residence are not deductible, because the sale was not necessary for the administration of the estate.  Petitioner concedes that these services were included in the fees.  Decedent's residence was specifically devised to Ms. Groetzinger, and it was not necessary to sell the residence to effect the distribution. There were sufficient liquid assets in the estate to pay the decedent's debts.  The sale of the residence was for the sole benefit of Ms. Groetzinger and not the estate.  Accordingly, we hold that the fees relating to the sale of decedent's residence are not deductible.

Respondent also contends that the fees relating to 11 hours of work performed to obtain advance payment of executor's commissions for Mr. Baird and Ms. Groetzinger are not deductible, because the advance commissions were not necessary for the administration of the estate.  Petitioner concedes that these services were included in the fees.  The petition filed on behalf of Mr. Baird and Ms. Groetzinger to the Monroe County Surrogate's Court requesting the advance payment of commissions provides that the executors needed the commissions for personal reasons (i.e., to prevent them from experiencing difficulty in "the management

of their cash flows.")  The advance payment of executor's commissions was for the sole benefit of Mr. Baird and Ms. Groetzinger and was not necessary for the administration of the estate.  Accordingly, we hold that the fees relating to the payment of advance executor commissions are not deductible.

The remaining services provided by HBW were essential to the administration of the estate.  Accordingly, we hold that the remainder of the fees are allowable under the regulations and, pursuant to section 2053(a)(2), are deductible from the gross estate.

We have considered the other arguments made by the parties and found them to be either irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.